IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRET G. RAILEY,<br>　　　Petitioner,<br><br>v.<br><br>CHRISTEL CROW, Warden,<br>　　　Respondent. | 1:24-cv-1364-JEH |

**Order and Opinion**

Before the Court is Petitioner Bret G. Railey's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner is currently serving a 100-year imprisonment sentence imposed by the Tazewell County Circuit Court, in Pekin, Illinois, after he was found guilty of home invasion and two counts of aggravated criminal sexual assault at a bench trial. Petitioner challenges both his conviction and sentence. For the reasons below, the Court DENIES the Petition and DECLINES to issue a certificate of appealability.

I[1]

A

In 1995, when Petitioner was 17 years old, he broke into the home of an 88-year-old woman, sexually assaulted her, stabbed her, and stole money from her

---

[1] The facts are taken from the undisputed facts in Respondent's Response (Doc. 10), which are consistent with the official records from Petitioner's state court proceedings, which Respondent attached to the response (Doc. 11; *People v. Railey*, 2023 IL App (3d) 210310-U). *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). The factual determinations of the state court are

1

purse. Petitioner was subsequently charged with home invasion and two counts of aggravated sexual assault in the Circuit Court of Tazewell County.

Petitioner waived his right to a jury trial. A stipulated bench trial was held in April 1997. *People v. Railey*, 2023 IL App (3d) 210310-U, ¶ 4. The parties stipulated that the victim, L.H. would testify that she was born in 1907 (making her 88 at the time of the offense). On November 22, 1995, she heard a knock at her door. *Id.* When she opened the door, Petitioner, whom she did not know, forced his way into her home. He forced L.H. onto the floor of her living room, pulled down her pants, and, without her consent, inserted his penis into her vagina and anus. *Id.* He then went to the dining room and took money L.H. had in an envelope. He returned to the living room and told L.H. to close her eyes because he was going to blind her so she could not identify him. *Id.* Petitioner stabbed L.H. below each eye. He then went through her purse and left. *Id.*

Officer J.M. Phillips's stipulated testimony included that he responded to L.H.'s house and found her with puncture wounds under her eyes. *Id.* ¶ 5. Dr. Gene Couri's stipulated testimony provided that he treated L.H. in the emergency department of the St. Francis Medical Center and observed "a strong probability of ejaculation in both the vaginal and anal cavities" when he completed the Illinois State Police sexual assault kit. *Id.* Next, Illinois State Police forensic scientist Kevin Zeeb's stipulated testimony established that semen was recovered from L.H.'s clothing and that DNA from the semen matched Petitioner's DNA profile. *Id.*

Morton Police Department Detective Bill Roth's stipulated testimony included that L.H. was able to identify Petitioner as her attacker from a photo

---

presumed to be correct, unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

array. *Id.* ¶ 6. Roth also interviewed Petitioner, who admitted to vaginally and anally penetrating L.H. with his penis and cutting her beneath each of her eyes. *Id.*

The trial judge found Petitioner guilty of the home invasion and two counts of aggravated sexual assault. Petitioner was sentenced to a total of 100-years imprisonment, consisting of two consecutive 50-year imprisonment terms for each aggravated sexual assault and a concurrent 50-year imprisonment sentence for the home invasion. The trial judge found that the imprisonment term would be served at 85% of the total.

### B

Petitioner appealed, arguing that the trial judge erred by denying his motion to suppress his confession. The appellate court rejected the argument and affirmed his conviction on May 17, 1999. *See* Doc. 11-1; *People v. Railey*, 305 Ill. App. 3d 1121 (1999). However, the appellate court modified the sentencing order to clarify that Petitioner was eligible for day-for-day good time credits that could reduce his sentence. Petitioner did not file a Petition for Leave to Appeal (PLA) with the Illinois Supreme Court.

### C

Twenty-two years later, in 2021, Petitioner filed a state postconviction petition challenging the constitutionality of his sentence based on the United States Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 480 (2012). By agreement of the parties, the trial court vacated Petitioner's sentencing judgment and held a resentencing hearing.

At the resentencing hearing, the parties submitted the trial record, the pre-sentence report from the original sentencing hearing and a report prepared by a social worker retained by Petitioner. At the hearing, Petitioner also spoke and took responsibility for his actions, stating: "It's hard for me to stand up here and know

3

what I did 25 years ago and the responsibility that I have to bear for that and the pain I have caused [L.H.]'s family and also my family." (Doc. 11-9 at 40).

The resentencing judge stated that in making her ruling she had considered "the evidence and arguments presented," "the entire court file" and "the *Miller* factors contained in 730 ILCS 5/5-4.5-105." (Doc. 11-9 at 41). While stating that she had "nothing but compassion for the young man that [Petitioner] [was] and the thing that [he] had to endure when [he] [was] a child," *id.* at 42, she also "considered the circumstances of the offense, and, boy, you can't take that back," *id.* at 43. Considering all the factors, the judge found that there was "irretrievable depravity, permanent incorrigibility and irreparable corruption beyond the possibility of rehabilitation." *Id.* at 45.

The resentencing judge also found that "in committing the Class X aggravated criminal sexual assault and the Class X home invasion [Petitioner's] extremely brutal and heinous behavior [] warranted an extended term sentence because that person was sufficiently over the age of 60, and I'm going to impose an extended term sentence as to Counts 2 and Count 3." *Id.* The judge then resentenced Petitioner to the same term of imprisonment: 50 years of imprisonment on Counts 2 and 3 to be served consecutively, along with a 50 year concurrent term of imprisonment on Count, to be served with day-for-day credit. *Id.*

**D**

Petitioner appealed his resentencing, arguing (1) that the sentencing court failed to properly consider the mitigation factors for minor defendants under 730 ILCS 5/5-4.5-105(a); and (2) that the extended term sentences imposed violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *People v. Railey*, 2023 IL App (3d) 210310-U. The Illinois Appellate Court affirmed the sentence. It found that the sentencing transcript shows that the sentencing court properly considered all relevant

4

mitigating factors and Petitioner's disagreement with the weight the court gave to the seriousness of the offense did not show an abuse of discretion. *Id.* ¶ 14.

The State conceded on appeal that the trial court violated *Apprendi*. *Id.* ¶ 18. However, the Illinois Appellate Court agreed with the State that the error was harmless because there was overwhelming evidence that the crime was committed in a brutal and heinous manner indicative of wanton cruelty and overwhelming evidence that the victim was over 60 years of age given the stipulation that she was born in 1907. *Id.* ¶¶ 19–20.

Petitioner filed a PLA with the Illinois Supreme Court raising the same grounds, which was denied on September 27, 2023. *People v. Railey,* 221 N.E.3d 365 (Ill. 2023).

E

Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 30, 2024. He raises five grounds for relief:

(1) Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when his trial counsel failed to conduct any investigation in the case and present a defense and when his appellate counsel failed to address any of the trial issues on appeal;

(2) Petitioner's due process rights were violated because he was mentally incompetent at the time of his arrest and trial and not able to assist in his own defense;

(3) Petitioner's due process rights were violated because his defense counsel acted on his father's behest in waiving the right to a jury trial and confrontation of witnesses rather than in the best interests of Petitioner;

(4) The resentencing court violated *Apprendi*, 530 U.S. 466, when it imposed extended-term sentences; and

(5) Petitioner's de facto life sentence for a crime he committed when he was a juvenile violates the Eighth Amendment.

Respondent filed its response to the Petition and argues that Petitioner's claims are either procedurally defaulted, meritless, or non-cognizable. (Doc. 10). Petitioner filed a timely reply. (Doc. 15).

After finding that Petitioner had arguably raised a claim under *Graham v. Florida,* 560 U.S. 48 (2010), the Court ordered additional briefing addressing Petitioner's eligibility for parole under 730 ILCS 5/5-4.5-115(b) and whether such eligibility satisfies the Eighth Amendment requirements for juvenile nonhomicide offenses as explained in *Graham v. Florida,* 560 U.S. 48 (2010), regardless of whether Petitioner's sentence is a *de facto* life sentence. The parties have filed their additional briefs. *See* Doc. 17, 18. The matter is now ripe for review.

## II

### A

Petitioner's first three grounds of relief are procedurally defaulted and the Court finds that this default cannot be excused. Prior to considering the merits of a petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018); *see also Davila v. Davis*, 582 U.S. 521, 527–28 (2017)(Federal courts may not review state prisoners' habeas claims that have been "procedurally defaulted in state court," a doctrine that advances "comity, finality, and federalism interests."). "A state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings,'" *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)), and "it is clear that those courts would now hold the claim procedurally barred," *Perruquet v. Briley,* 390 F.3d 505, 514 (7th Cir. 2004). Accordingly, "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)).

Here, Petitioner's ineffective assistance of counsel claims and due process claims in grounds 1, 2, and 3, were not presented in his direct appeal or state postconviction petition, so they are procedurally defaulted.

Moreover, Petitioner has not shown cause to excuse his procedural default. "Procedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386). "[T]he miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (internal citations omitted).

Petitioner has not presented any basis to excuse his default and the Court finds no reason apparent from the record. While Petitioner seeks to bring a claim that his appellate counsel was ineffective for failing to argue the ineffectiveness of his trial counsel and raise his other claims, this claim is itself procedurally defaulted. To the extent that Petitioner would fault his direct appeal counsel for failing to raise this issue, he would have needed to raise that claim of ineffective assistance of appellate counsel in his state postconviction proceedings to avoid procedural default, and he did not. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted," and to proceed a petitioner must "satisfy the cause-and-prejudice standard with respect to *that* claim"); *see also, Davila v. Davis*, 582 U.S. 521, 529 (2017) (A federal court is not allowed "to hear a substantial, but procedurally defaulted, claim of ineffective

assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim.").

Moreover, there is no right to post-conviction counsel, so errors of post-conviction counsel that led to the default of "claims in state court cannot constitute cause to excuse the default in federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 757 (1991). Petitioner argues that the exceptions to *Coleman* announced in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), should apply. However, the Seventh Circuit has held that this exception does not apply to ineffective assistance of counsel claims brought in Illinois because Illinois does not impose the kind of repressive procedural rules on *Strickland* claims that *Martinez* and *Trevino* found warranted an exception. *Crutchfield v. Dennison*, 910 F.3d 968, 971 (7th Cir. 2018). Accordingly, the Court finds that Petitioner's first three grounds for relief must be dismissed as procedural defaulted

**B**

Petitioner next argues that he is entitled to resentencing because the state court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that due process requires that any fact that increases the penalty for a state crime beyond the statutory maximum, other than a prior conviction, must be submitted to the factfinder at trial (here, the judge in petitioner's 1997 stipulated bench trial) and the factfinder must find that the prosecution proved the sentence-increasing factor beyond a reasonable doubt. 530 U.S. at 490; *see also Mack v. McCann*, 530 F.3d 523, 536 (7th Cir. 2008) (noting that *Apprendi* applies to trial judge in bench trials). Normally, Petitioner's convictions of home invasion and aggravated criminal sexual assault are subject to prison sentences of 6 to 30 years. However, Illinois law provides that a defendant is subject to an extended sentence of up to 60 years for each offense if the victim was over 60 years old or the offense involved "exceptionally brutal or heinous behavior indicative of wanton cruelty."

See 730 ILCS 5/5-5-3.2(b)(3)(ii) (victim 60 years of age or older); 730 ILCS 5/5-5-3.2(b)(2) (exceptionally brutal or heinous behavior indicative of wanton cruelty). However, the indictment filed in 1995 did not provide notice that the prosecution intended to seek extended sentences and the judge at Petitioner's stipulated bench trial did not make an express finding that the facts used to impose Petitioner's extended-term sentences were proved beyond a reasonable doubt. Nonetheless, the resentencing court found that the victim was over the age of 60 and that Petitioner's offenses involved exceptionally brutal or heinous behavior indicative of wanton cruelty, and, therefore, sentenced him to an extended terms of 50 years in prison on each of his three convictions (two of which were to be served concurrently).

Petitioner raised his *Apprendi* claim on direct appeal from his resentencing, so the state court's decision on this ground is entitled to deference under 28 U.S.C. § 2254(d)(1). Where a state court has adjudicated a petitioner's claims on the merits, pursuant to § 2254(d), "[a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow*, 880 F.3d at 863–64 (quoting 28 U.S.C. § 2254(d)); *See also Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (when a state court resolves a claim on the merits, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

"[A] decision is deemed "contrary to" clearly established federal law if the state court reached 'a conclusion opposite to that' of the Supreme Court on a legal matter [ ] or if the state court arrived at an outcome in direct contradiction to a

'materially indistinguishable' case decided by the Supreme Court." *Gambaiani v. Greene,* No. 23-2690, 2025 WL 1378148, at *3 (7th Cir. May 13, 2025) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000). However, "federal courts are cautious to grant relief, reviewing state-court factual findings with a healthy dose of deference. . . . The proper inquiry focuses [ ] on whether the alleged factual error is beyond debate." *Gambaiani*, 2025 WL 1378148, at *4.

The Illinois Appellate Court agreed that an *Apprendi* error had occurred, but held that the error was harmless. *Railey*, 2023 IL App (3d) 210310-U, ¶¶ 17-20. The Illinois Appellate Court correctly determined that the harmless-error analysis applied to *Apprendi* violations: The Supreme Court held in *Washington v. Recuenco*, 548 U.S. 212 (2002), that the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." 548 U.S. at 222. Accordingly, a failure to submit a sentencing factor to the jury—or in the case of a bench trial, the judge— is subject to harmless-error analysis. *Id.* at 220.

And, the Illinois Appellate Court's harmless-error analysis was a reasonable application of federal law and was reasonably applied to the facts of Petitioner's case. To find a nonstructural constitutional error harmless, the Supreme Court has instructed that "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Neder v. United States*, 527 U.S. 1, 7 (1999). Relying on Illinois caselaw, the Illinois Appellate Court stated that "[a]n *Apprendi* violation does not warrant resentencing 'where there is overwhelming evidence that the crime was committed in a brutal

and heinous manner indicative of wanton cruelty.'" *People v. Railey*, 2023 IL App (3d) 210310-U, ¶ 19, (quoting *People v. Kaczmarek*, 207 Ill. 2d 288, 302 (2003)). The Illinois Appellate Court reviewed the stipulated facts of Petitioner's case "where [Petitioner] stabbed the victim in her eyes after raping her so that she could not identify him later." *Railey*, 2023 IL App (3d) 210310-U, ¶ 19. It then concluded that they had "no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Id. (quoting People v. Kaczmarek*, 207 Ill. 2d 288, 304 (2003)). Moreover, "there was overwhelming evidence that the victim was over 60 years of age given the stipulation that she was born in 1907." *Id*. The state court's conclusion that it had "no doubt" the jury would have reached the same conclusion satisfies the requirement that "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. Moreover, in conducting the analysis, the state court reasonably applied the stipulated facts of the case to the Illinois law regarding when the enhancement applies. Accordingly, the Court finds that the Illinois Appellate Court's decision is entitled to deference under § 2254(d)(1).

## C

Finally, Petitioner claims that he is entitled to relief because Petitioner's de facto life sentence for a crime he committed when he was a juvenile violates the Eighth Amendment. Notably, Petitioner's crime was not homicide, so his Eighth Amendment claim analysis starts with the Supreme Court's decision in *Graham v. Florida,* 560 U.S. 48 (2010). *Graham* held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82. This holding is different than the Supreme Court's rule from *Miller v. Alabama*, 567 U.S. 460 (2012), which held that individuals who committed the offense of *homicide* when they were under 18 years old may

11

only be sentenced to life without parole if the sentencing judge has the discretion to impose a lesser punishment. 567 U.S. at 479. If the crime committed is not homicide, as is the case here, the Constitution does not allow the imposition of a life without parole sentence on a juvenile offender regardless of any findings by the trial judge.

Petitioner's sentence as pronounced will allow him to be released no earlier than age 67. Petitioner's sentence is considered a *de facto* life sentence under state law, as it is over 40 years. *People v. Buffer*, 2019 IL 122327, ¶ 41, 137 N.E.3d 763, 774 (finding a prison sentence of more than 40 years for a juvenile offender to be a *de facto* life sentence for purposes of *Miller* and *Graham*). Petitioner cannot rely on state law protections for his § 2254 Petition, *see Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991), and, in federal court, the cut off is not so clear. However, the Seventh Circuit has held that *Miller* and *Graham* "cannot logically be limited to *de jure* life sentences, as distinct from sentences denominated in number of years yet highly likely to result in imprisonment for life." *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016); *see also Hauschild v. Harrington*, 732 F. Supp. 3d 839, 860 (N.D. Ill. 2024), *amended*, No. 13 CV 5032, 2024 WL 2845987 (N.D. Ill. June 4, 2024) (collecting cases and concluding that sentences at or slightly below the offender's life expectancy— around age 70—should be considered life sentences for purposes of *Miller* and *Graham*).

Nonetheless, as confirmed by the supplemental briefing, Petitioner is eligible for parole pursuant to Illinois Public Act 100-1182 (eff. June 1, 2019). Under this Illinois law, a person who was under the age of 21 at the time of the crime, who was sentenced on or after June 1, 2019, and is serving a sentence for aggravated criminal sexual assault, shall be eligible to petition for parole after 20 years. 730 ILCS 5/5-4.5-115(b). Respondent has confirmed that Petitioner, having been resentenced after June 1, 2019, for aggravated criminal sexual assault, is

eligible for parole under the plain terms of the statute. (Doc. 17 at 2). *See also, People v. Beck*, 192 N.E.3d 842, 844-46, 850 (Ill. App. Ct. 2021); *People v. Cavazos*, 232 N.E.3d 80, 98, *appeal pending* (Nov Term 2023).

Petitioner argues that the parole process is not sufficient to satisfy *Graham* because his "genuine prospects for release remain uncertain and highly contingent upon a parole review process inadequately structed to ensure fair and meaningful consideration." (Doc. 18 at 4). The Court disagrees. *Graham* does not require a State "to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." *Graham,* 560 U.S. at 75. Rather, States must give such defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* The statute as written meets the *Graham* requirements. The statute allows an offender to commence the parole review process three years before he is eligible for parole by filing a petition for parole, at which time a representative from the Department of Corrections must meet with the offender to discuss the parole review process and make "personalized recommendations" regarding work assignments, rehabilitative programs, and institutional behavior, and the offender may request programs be made available that he believes will help prepare him to return to the community. 730 ILCS 5/5-4.5-115(c), (d). Furthermore, the offender is permitted to retain counsel or, if he is indigent, is entitled to the appointment of counsel to represent him during the parole process and the parole review hearing. *Id.* § 5-4.5-115(e). At the hearing, the Prisoner Review Board panel "shall consider," among other things, "the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." Id. § 5-4.5-115(j). And, if parole is denied, then (1) the Prisoner Review Board must provide the offender and his counsel a written decision that "states the rationale" for the denial; and (2) the offender is entitled to petition for parole in another 10

13

years if he was convicted of first degree murder or aggravated criminal sexual assault (or five years if he was convicted of a lesser offense). Id. § 5-4.5-115(l), (m). All of these procedures together ensure that Petitioner will have a meaningful opportunity to demonstrate his "maturity and rehabilitation" when he becomes eligible to seek parole.

Petitioner argues that his "theoretical" eligibility for parole "offers no practical or reliable guarantee that rehabilitation will be meaningfully evaluated or rewarded." Petitioner seeks to rely on *Brown v. Precythe*, 46 F.4th 879, 887 (8th Cir. 2022), claiming this case struck down Missouri's parole system for juvenile offenders. (Doc. 18 at 9). However, the case did the opposite: after reviewing the factors the parole board is required to consider and the procedures in place, the court concluded that the parole system provides "some meaningful opportunity" for an offender to obtain release based on demonstrated maturity and rehabilitation. *Brown,* 46 F.4th at 887. The Court reaches the same conclusion here. The Constitution does not require that Petitioner be guaranteed parole, only a meaningful opportunity to obtain it. The procedures put in place by the Illinois statute meet this requirement. Petitioner also argues that the parole board's discretion remains largely unchecked. While the Court acknowledges that there is always a possibility that a parole board will not follow its statutory mandate of considering "the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration," at this time Petitioner's concerns are premature. Should the Illinois Parole Board disregard the statute in the course of Petitioner's parole review, he may seek any appropriate relief at that time. *See also, Sanders,* 981 F.3d at 644 (noting that the petitioner "is convinced the deck is stacked against his receiving parole" but finding that "[n]ow is not the time for Sanders to advance this argument").

Next, Petitioner argues that the infrequency of the parole review—once every ten years if initially denied—is insufficient to address the possibility of rehabilitation and redemption over time. (Doc. 18 at 7). However, nothing in *Graham* requires ongoing review of a Petitioner's rehabilitation and redemption. *See also, Sanders*, 981 F.3d at 643 (finding the availability of at least one parole review prior to the end of a petitioner's life expectancy was sufficient).

The Court also notes that, in support of his argument that parole will not be a meaningful opportunity for release, Petitioner argues that the IDOC records incorrectly state that he is eligible for day-for-day credits, when, pursuant to statute Petitioner believes he is not. (Doc. 18 at 5). Petitioner argues that "[i]f the agency responsible for maintaining accurate sentence calculations cannot correctly represent a juvenile offender's basic release eligibility—even post sentencing—then it cannot credibly claim to administer a constitutionally sufficient parole scheme." *Id.* at 6. However, the resentencing transcript is clear that the parties agreed the sentence was required to be served day-for-day. *See* Doc. 11-9 at 42–43. Specifically, Petitioner's attorney stated that "I think we have a right to elect to be sentenced under the law at the time[,] which was found unconstitutional, and, therefore, it is I think required to be served day-for-day." *Id*. The Court responded that she would not change that Petitioner would be entitled to day-for-day credit and that Petitioner is "entitled to whatever credit he has accrued to date." *Id*. Moreover, both Respondent's brief and the IDOC website confirm that Petitioner is eligible for and earning good time credit. Accordingly, the Court finds that the record is clear that Petitioner is eligible for and earning day-to-day credit.

Accordingly, the Court finds that Petitioner's sentence as executed does not violate the Eighth Amendment. His fifth claim is, therefore, denied as well.

### III

Should Petitioner wish to appeal this decision, he must obtain a certificate of

appealability. 28 U.S.C. § 2253(c)(1). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This will hold true only when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (1995). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016). Here, the Court does not find that reasonable jurists could disagree that the Petitioner's claims are procedurally defaulted, entitled to deference under 28 U.S.C. § 2254(d), not cognizable in federal review, and/or meritless. The Court declines to issue a certificate of appealability.

### IV

The Clerk of Court is directed to enter judgment as follows: Petitioner Bret Railey's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED. The Court DECLINES to issue a certificate of appealability. This case is CLOSED.

*It is so ordered.*

Entered on October 24, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE